ROBERTS *v.* BAUCUM DRAINAGE DISTRICT.

4-5577                                                        132 S. W. 2d 184

Opinion delivered October 16, 1939.

*Carmichael & Hendricks,* for appellant.

*John Sherrill* and *Frank Wills,* for appellee.

HUMPHREYS. J.   A petition of appellant and other landowners residing in certain territory in Pulaski county, Arkansas, was filed in the county court of said county on July 20, 1935, for the creation and establishment of Baucum Drainage District under authority of act 279 of the General Assembly for the year 1909 and act 221 for the year 1911 and other acts amendatory thereof.   These acts are digested under chapter 52 of Pope's Digest.   The lands in question were drained by the Faulkner Lake Drainage District and the petition requested that the landowners in the proposed district be allowed to construct or repair any levees or flood gates then existing, and in addition be permitted to construct new ditches, levees and flood gates when same might be deemed advisable to protect the proposed drainage system.   Section 4489 of Pope's Digest provides that the word "ditch" includes levees and provides for the construction thereof under the same procedure as the building of drains.   H. G. Martin, the engineer appointed by the court for making the preliminary survey made a report to the court that the land included

in the preliminary survey and described in the preliminary survey would be equally and ratably benefited by the proposed improvement of the Baucum Drainage District and that the same should be equally and ratably assessed for all benefits accruing from said improvement.

After the preliminary steps necessary for the creation of the district had been complied with the petition was heard by the county court and it was ordered and adjudged by the court that "a drainage district by the name and style of Baucum Drainage District of Pulaski county, Arkansas, be and the same is created and established" under the provisions of the aforesaid acts and amendments thereto.

Thereafter the commissioners of the district were duly appointed and each filed the required oath under the acts.

The Board of Commissioners then filed the plans and specifications and a statement of the cost of the improvement, said plans being accompanied by a map showing the location of all mains and lateral ditches, levees and other improvements fully described in the specifications attached.

After the establishment of the district the estimated cost for constructing a levee along the river front to protect the lands in said district from overflow was so great that the commissioners sought government aid to assist in building a levee instead of attempting to construct the improvements themselves and did secure such aid. The government, through its engineers and under authority of the 74th Congress, proposed to the commissioners of said district that it would construct the levee on the St. Louis-Southwestern Railroad right-of-way, to which there was no objection by the railroad company, at its own expense provided the district would pay $4,000 which would be the cost of four thousand feet of eight-inch perforated pipe to be placed under the railroad ballast for drainage purposes. This proposal came in the form of a letter to the commissioners of the district on April 15, 1938, as follows:

"We are addressing this letter to you for your information in arriving at the amount of money which your district will be required to raise in order to conform with the regulations of the United States engineer office. 1. The district will not be required to expend any money for borrow pit. 2. The district will not be required to expend any money for drainage structures. 3. Under your contract with the Cotton Belt Railroad you agree to assume the cost of installing a system of perforated pipe underneath the present railroad ballast in order to remove water from the ditch which will exist between the levee and the railroad bed after the levee is constructed..

"Under the railroad specifications there is to be installed an 8-inch pipe 24 feet in length, spaced every 200 feet. This amounts to 4,000 feet of perforated pipe which we estimate will cost to install $1 per foot, or, say, a total of $4,000.

"This amount, with the exception of administration expense, attorneys, engineers, etc., is in our judgment, all the money that it will be necessary for this district to raise."

The commissioners accepted the proposal to construct the improvement and the levee work was begun on the 15th day of June, 1938, and completed at a cost of about $75,000 at the expense of the government and for the purpose of raising the necessary fund to pay for four thousand feet of perforated pipe of $4,000 it assessed benefits against about ten thousand acres of land included in said district for the purpose of constructing the levee and drain provided for in the plans and specifications. The commissioners certified this assessment roll or benefit against each tract of land to the county court on October 3, 1938. The district through its commissioners requested the county court to review the assessment and to confirm, increase or diminish same as the court might find proper.

The appellant filed a petition denying legality of the district and attacked the correctness of the assess-

ments. He prayed that the district be dissolved and that the assessments be quashed. After hearing the evidence the court found that the district should be dissolved and refused to confirm, increase or diminish the assessments.

Baucum Drainage District appealed from the action of the court in dissolving the district and from its refusal to act upon the adjustment of benefits and in circuit court filed a motion to reverse the action of the county court in dissolving the district and filed a petition for a mandamus requiring the county court to exercise his jurisdiction upon the assessment of benefits and damages and the levying of the tax and other procedure necessary for the completion of the district.

Appellant filed an answer or response to the petition demanding that the circuit court hear the case *de novo* upon its merits as if the case had been originally brought in the circuit court. The circuit court sustained the motion of appellee to set aside the order of the county court dissolving the district and the application for a mandamus requiring the county court to exercise its jurisdiction with reference to the assessment of benefits and damages and remanded the case with directions to the county court to exercise its discretion with reference to the assessment of benefits and damages against the respective tracts of land and to levy a tax for the payment of the improvements made in the district.

Appellant contends that the court erred in reversing the judgment of the county court in dissolving the district without a trial *de novo* in the circuit court. We do not think so because a trial *de novo* on that proposition was unnecessary. This court decided in the case of *Wilson* v. *Mattix,* 149 Ark. 23, 231 S. W. 197, that the county court was without authority to dissolve a drainage district after it has been organized and sustained a motion to dismiss the cause on the ground that the county court had no jurisdiction to adjudicate the dissolution of the district. In so ruling this court said: "A search of the statute from end to end fails to dis-

close any provision which, either in express terms or by implication, can be construed to confer authority on the county court to dissolve the district after it has been organized. The county court, in the absence of a statute can not exercise that authority.''

It is true that since this decision was rendered such authority was conferred upon county courts at the request of the Board of Commissioners when they should deem it inadvisable or impracticable and for the best interest of the property owners of the district, not to construct the improvements contemplated by the organization of the district under certain conditions. Such authority is conferred by § 3 of act 59 of the Acts of 1927 (Pope's Digest, § 4525). But this statute has no application in the instant case for the reason that the Board of Commissioners have made no such request of the county court. As far as applications by landowners in the district are concerned, the statute is just the same now as it was when the decision of *Wilson* v. *Mattix, supra,* was handed down by this court.

Appellant contends, however, that he was entitled to a trial *de novo* in the circuit court on the question of assessment of benefits to the respective tracts of land and damages thereto and a levy for a collection of the taxes and that the court erred in remanding the case to the county court for those purposes. Appellant would be correct in this contention had the county court determined those issues, but having refused to exercise its jurisdiction with reference to the assessment of benefits and damages and to act upon and levy a tax for the payment of the improvements made in the district, the circuit court was correct in issuing a writ of mandamus requiring the county court to exercise its discretion conferred upon it by § 4463 of Pope's Digest. Section 4463 of Pope's Digest provides that upon filing the complaint against the assessment of benefits or damages, ''the county court shall consider the same and enter its findings thereon.'' The county court had exclusive original jurisdiction to pass upon the assessment of benefits and the damages and to levy the tax for the payment of the

improvements made in the district and where it refused to do so the remedy to compel it to exercise its jurisdiction was by mandamus.

The case of *Batesville* v. *Ball,* 100 Ark. 496, 140 S. W. 712, Ann. Cas. 1913 C, 1317, relied upon by appellant is not applicable and does not rule the instant case because in that case no discretion was to be exercised by the county court such as passing upon assessments or the levying of taxes, while in the instant case such duty rested upon the county court in the first instance and no duty rested upon the circuit court to try the issue of assessments, damages and the levying of taxes until the county court had first exercised its jurisdiction in passing upon the assessments, damages, etc. The court, therefore, correctly granted the writ of mandamus to compel the county court to exercise its jurisdiction in these matters because it had failed or refused to do so. *Moyer* v. *Altheimer,* 168 Ark. 271, 270 S. W. 91; *Hudson* v. *Parker,* 156 U. S. 277, 15 S. Ct. 450, 39 L. Ed. 424.

No error appearing, the judgment of the circuit court is affirmed.